IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 10-00033-01-CR-W-SOW |
| | ) | |
| BILLY BLUE GARRISON, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

This matter is currently before the Court on defendant Garrison's Motion to Suppress (doc #25). For the reasons set forth below, it is recommended that this motion be denied.

### I. INTRODUCTION

On February 9, 2010, the Grand Jury returned a one count indictment against defendant Garrison. The indictment charges that on January 13, 2010, defendant Garrison possessed with the intent to distribute fifty grams or more of methamphetamine.

On March 29, 2010, an evidentiary hearing was held on defendant's motion to suppress. Defendant Garrison was represented by appointed counsel Phillip R. Gibson. The Government was represented by Assistant United States Attorney Bruce A. Rhoades. The Government called Officer Logan Waterworth, Detective Justin Leach, Officer Jeremy Stauch and Sergeant Gary Tucker of the Independence, Missouri Police Department as witnesses. The defense called Heather Vanderpool to testify.

### II. FINDINGS OF FACT

On the basis of the evidence adduced at the evidentiary hearing, the undersigned submits the following proposed findings of fact:

    1.    On January 13, 2010, Officer Logan Waterworth reported to work for his 7:00 p.m. regular patrol shift and was advised at that evening's briefing that Billy Garrison had a $200,000 arrest warrant for tampering with a motor vehicle (i.e. stolen vehicles), a felony. (Tr. at 4-5, 35) Officer Waterworth recognized Garrison's name as he had stopped him one time in the past. (Tr. at 5) Officer Waterworth contacted a bonding agency to determine where Garrison was living. (Tr. at 6) The bonding agent called

        Garrison's girlfriend and Garrison's girlfriend advised that they had moved back and were living up from Dairy Queen on Glenwood. (Tr. at 6-7) Garrison's girlfriend said that Garrison was at the house working on his truck. (Tr. at 6) This conversation took place on a speaker phone and Officer Waterworth could hear the conversation. (Tr. at 6) Waterworth was familiar with the address[1] from a local contact with Garrison and the address was also in the police department's computer system. (Tr. at 6-7) Officer Waterworth testified that defendant Garrison's house sits way back and that there is a long drive. (Tr. at 8) More than one house shares the driveway. (Tr. at 8) Officer Waterworth testified that he contacted Detective Justin Leach and Sergeant Gary Tucker of the drug unit with the information on defendant Garrison's whereabouts. (Tr. at 7) After contacting Detective Leach and Sergeant Tucker, Officer Waterworth went on his routine patrol. (Tr. at 7)

2.     Detective Leach testified that he received a phone call from Officer Waterworth at approximately 10:30 p.m. to advise that Waterworth had received an anonymous tip that defendant Garrison was at an address on Glenwood. (Tr. at 11, 18) Detective Leach was familiar with Garrison and with the address on Glenwood. (Tr. at 11) Detective Leach testified that Garrison had previously had a search warrant served on this residence and Leach had known Garrison to be stopped in front of the residence in his vehicle. (Tr. at 11)

3.     Detective Leach and Sergeant Tucker responded to 575 ½ Glenwood in an unmarked vehicle, did a drive-by of the residence and took up surveillance on the street at approximately 11:20 p.m. (Tr. at 11, 21) The officers went to the residence to arrest Garrison on the warrant. (Tr. at 19) Detective Leach testified that he thought it would be better to arrest Garrison in a car rather than at his home for officer safety reasons. (Tr. at 22) Detective Leach testified that Garrison's residence (575 ½ Glenwood or 575 B Glenwood) sits further back off the street than other residences. (Tr. at 11-12) It is a single family residence. (Tr. at 12) Detective Leach testified that the driveway may service one other residence in addition to Garrison's residence, but Leach was not certain. (Tr. at 12) Detective Leach was parked about 50 yards from the driveway. (Tr. at 13) The officers did not have a clear view of the front of the residence because the house sits so far off the street. (Tr. at 13) They only had a view of the driveway. (Tr. at 13) Detective Leach testified that he noticed a red Ford van in the driveway during the drive-by, but from where the officers had taken up surveillance, they could not see the van. (Tr. at 12-13)

4.     While Detective Leach and Sergeant Tucker were conducting their surveillance, they observed another vehicle pull into the driveway. (Tr. at 14) The vehicle stayed for a short period of time and then left again. (Tr. at 14) The officers were not able to see anyone enter or exit the vehicle. (Tr. at 14) When the vehicle left, it drove by Detective Leach and Sergeant Tucker. (Tr. at 14) Sergeant Tucker was able to see one person, a female, in the vehicle. (Tr. at 14-15) Detective Leach and Sergeant Tucker instructed patrol officers that if they could find probable cause to stop the vehicle, to go ahead and stop it. (Tr. at 15) The vehicle was ultimately stopped and only the female was found inside it. (Tr. at 15)

---

[1] Officer Waterworth testified that he thought the address was 572 ½ Glenwood. (Tr. at 7) Detective Leach testified that the address was 575 ½ Glenwood. (Tr. at 11)

5.  Detective Leach and Sergeant Tucker observed the red Ford van leave the residence. (Tr. at 15) The officers were not able to see who got inside the vehicle. (Tr. at 15) The van drove past Detective Leach and Sergeant Tucker. (Tr. at 16) Detective Leach testified that he could tell there were two occupants, but he could not tell who was driving. (Tr. at 16) Detective Leach and Sergeant Tucker instructed Officers Waterworth and Stauch that if they could find probable cause to stop the vehicle, to go ahead and make the stop. (Tr. at 15-16) Detective Leach and Sergeant Tucker then left the surveillance and went to the scene of the traffic stop. (Tr. at 16)

6.  Officer Jeremy Stauch testified that he was advised of the felony arrest warrant for defendant Garrison at the briefing which took place when he reported to work. (Tr. at 28) Officer Stauch knew who Garrison was through previous contact and knowledge throughout the department. (Tr. at 28) After the briefing, Officer Stauch went out on patrol. (Tr. at 28) Officer Stauch later became aware that there were officers conducting surveillance at Garrison's residence, 575 ½ Glenwood. (Tr. at 28-29) Officer Stauch was assigned to assist if any vehicles were to leave the area. (Tr. at 29) Officer Stauch was the assisting officer in a traffic stop of a white Ford Explorer that left the area. (Tr. at 29) Officer Stauch was later advised that a red van was leaving the Glenwood address. (Tr. at 30-31) Officer Stauch was told that it was unknown as to the occupants inside the vehicle and to stop the vehicle if he had probable cause. (Tr. at 30)

7.  Officer Stauch responded to the area. (Tr. at 31) Officer Stauch encountered the red van in approximately 30 seconds to a minute. (Tr. at 31) Officer Stauch testified that he observed the vehicle sport through a light without using a blinker and crossing the white lane divider lines. (Tr. at 32) Officer Stauch initiated his emergency lights to stop the vehicle.[2] (Tr. at 32) As he was initiating the stop, Officer Stauch was on the radio asking dispatch to run the tags on the vehicle. (Tr. at 33) Just as the vehicle stopped, Officer Stauch heard back from dispatch that the tags responded to a 1995 Ford pickup.[3] (Tr. at 33) Further, the tags were expired. (Tr. at 33)

8.  Officer Stauch exited his police vehicle and approached the driver's side of the red van. (Tr. at 33-34) Officer Stauch recognized defendant Garrison as the driver of the van.[4] (Tr. at 34) Officer Stauch described Garrison as standoffish and

---

[2]The dash-cam video also shows the van swerving slightly over the divider line without signalling and the officer's emergency lights subsequently being activated. (Government's Ex. 1; Defendant's Exs. 9 and 10)

[3]While Officer Stauch's report (Defendant's Ex. 14) states that he initiated his emergency lights to stop the van after he was advised by dispatch that the license plates came back to a 1995 Ford pickup truck, the dash-cam video and audio show that Officer Stauch activated his emergency lights upon observing the van swerve over the white line and that Officer Stauch called for dispatch to run the plates while he was pulling over the van (Defendant's Exs. 9 and 10).

[4]The dash-cam recorded Officer Stauch telling other officers, "I recognized him through the mirror ... that's why I stopped him." (Defendant's Ex. 10 at 23:44.20-23) However, Officer Stauch testified at the hearing that when he pulled the van over, he did not know the driver was Garrison. (Tr. at 53, 68)

3

argumentative. (Tr. at 34) Officer Stauch told Garrison that he was stopped because of a traffic violation. (Tr. at 55) Garrison produced a driver's license, but was unable to provide Officer Stauch with a registration or insurance information. (Tr. at 34-35) Officer Stauch went back to his vehicle to confirm the arrest warrant. (Tr. at 35) Officer Stauch confirmed that the warrant was valid. (Tr. at 35)

9. Officer Waterworth became aware of the fact that defendant Garrison had been stopped by another officer and Waterworth responded to that location to assist. (Tr. at 7) Officer Waterworth arrived on the scene and assisted Officer Stauch with having Garrison exit the vehicle. (Tr. at 35) The officers advised Garrison that there was a warrant for his arrest. (Tr. at 36) Garrison was hesitant and did not want to exit the vehicle. (Tr. at 36) After telling him to exit several times, Officer Waterworth opened up the front right passenger door, pointed his taser at Garrison and commanded him to get out of the vehicle. (Tr. at 36) Garrison exited the vehicle. (Tr. at 37) The officers handcuffed Garrison and placed him in Officer Stauch's vehicle. (Tr. at 37)

10. A female was also in the red van. (Tr. at 37) The female was removed from the vehicle. (Tr. at 38) The female was not initially arrested. (Tr. at 37)

11. A search of defendant Garrison's vehicle was conducted. (Tr. at 38) Officer Stauch testified that the basis of the search was to see if there were any guns or other unsafe items in the vehicle. (Tr. at 38) Further, at the time the vehicle was searched, Officer Stauch was planning on having the vehicle towed. (Tr. at 40) A closed soft cooler was located during the search. (Tr. at 54-55) The cooler contained:

- One plastic Dole container, containing 8 plastic baggies of a white crystal substance;
- Three more baggies of a white crystal substance;
- Several Miscellaneous paraphernalia items, i.e. clear plastic baggies, metal spoon, glass pipe; and
- Digital scale.

(Defendant's Ex. 14) Officer Stauch did not prepare an inventory listing of all the items in the vehicle, only the illegal items found in the cooler. (Tr. at 55) Officer Waterworth completed the tow paperwork. (Tr. at 73) Officer Stauch testified that Officer Waterworth should have completed an inventory listing as part of the tow paperwork. (Tr. at 73)

12. The female was arrested after the search of the vehicle uncovered the illegal substance. (Tr. at 38)

13. A canine search of the vehicle was also conducted. (Tr. at 62) The canine hit on the sandbags in the rear of the vehicle. (Tr. at 61-62)

14. Defendant Garrison was arrested on the Clay County warrant, but he was not taken to Clay County because narcotics were found in his vehicle after the search. (Tr. at 20-21)

15. The Independence Police Department's written policy relating to inventory searches provides in part:

> Inventory Search of Seized Vehicle Required
>
> ■ Pursuant to General Order PD95-033, Law Enforcement Role and Authority, an inventory search will be conducted on any vehicle seized by a member of the department. ...

(Government's Ex. 3 at 2)

## III. DISCUSSION

Defendant Garrison seeks to suppress the fruits of a search of his automobile on January 13, 2010. (Motion to Suppress (doc #25) at 1) In support of the motion, defendant argues that there was no probable cause for the stop of the vehicle and no reasonable suspicion that the driver of the vehicle had committed any kind of violation or that defendant was the driver of the vehicle. (Id. at 2) The vehicle was stopped merely because the Independence Police Department wanted the occupants of the vehicle identified. (Id.) Further, the vehicle was searched without a warrant in violation of the Fourth Amendment. (Id.) In supplemental briefing, defendant argues that the search of the vehicle was conducted as an unconstitutional search incident to arrest. (Suggestions in Support of Motion to Suppress (doc #33) at 19-20) In Arizona v. Gant, 129 S.Ct. 1710 (2009), the United States Supreme Court found unconstitutional a search incident to arrest when the arrestee has been secured and could not access the interior of the vehicle. (doc #33 at 19) Defendant contends that since he had been removed from the vehicle and handcuffed prior to the search, the search incident to arrest was unconstitutional. (Id.)

The initial stop of defendant Garrison's vehicle was lawful. As the Eighth Circuit Court of Appeals has observed, "a traffic violation–however minor–creates probable cause to stop the driver of the vehicle." United States v. Lyons, 486 F.3d 367, 371 (8th Cir. 2007); United States v. Gregory, 302 F.3d 805, 809 (8th Cir. 2002), cert. denied, 538 U.S. 992 (2003); United States v. Foley, 206 F.3d 802, 805 (8th Cir. 2000). Prior to pulling the vehicle over, Officer Stauch observed the vehicle swerve into the next lane without signaling. (See Fact No. 7, supra) In addition, before Officer Stauch approached the driver of the vehicle, he had run the tags on the vehicle and knew that the

tags responded to a different vehicle and that they were expired. (Id.)  Both the traffic violation and the information which came back on the tags provided probable cause to stop the vehicle.  The fact that Officer Stauch had other motives for wanting to stop the vehicle does not invalidate the traffic stop.  In United States v. Cummins, 920 F.2d 498 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991), the Eighth Circuit Court of Appeals found:

> In our view, this otherwise valid stop does not become unreasonable merely because the officer has intuitive suspicions that the occupants of the car are engaged in some sort of criminal activity.  It is also our view that the stop remains valid even if the officer would have ignored the traffic violation but for his other suspicions.

Id. at 501.  See also United States v. Herrera-Gonzalez, 474 F.3d 1105, 1109 (8th Cir. 2007)("the subjective intentions of the officer making the stop are irrelevant in determining the validity of the stop"); United States v. Coney, 456 F.3d 850, 855-56 (8th Cir. 2006)(officer had probable cause to conduct traffic stop when he observed minor traffic violation, even if traffic stop was pretext for other investigation).

Further, police may conduct a brief investigatory stop of a vehicle and its occupants based solely on the "reasonable suspicion" that a person for whom there is an outstanding arrest warrant is present in the vehicle.  See United States v. White, 162 Fed. Appx. 520, 523 (6th Cir. 2006); United States v. Tellez, 11 F.3d 530, 532-33 (5th Cir. 1993), cert. denied, 511 U.S. 1060 (1994). Thus, regardless of whether defendant Garrison committed a traffic violation, if the police had reasonable suspicion to believe that defendant Garrison was in the vehicle, they were justified in stopping it.  The facts before the officers were that on the evening of defendant Garrison's arrest, Garrison's girlfriend told a bonding agent (over a speaker phone so that an officer could hear the conversation) that she and Garrison had moved back and that they were living up from Dairy Queen on Glenwood.  (See Fact No. 1, supra)  Garrison's girlfriend further stated that Garrison was at the house working on his truck.  (Id.)  Officers were familiar with the address on Glenwood as they had previous contacts with Garrison at this address.  (See Fact Nos. 1 and 2, supra)  A search warrant had even been served on Garrison at this address.  (See Fact No. 2, supra)  A red Ford van was parked in the driveway of Garrison's residence when officers took up surveillance at the residence,

6

less than an hour after they received the information that Garrison was present at the residence. (See Fact Nos. 2 and 3, supra) The red Ford van was stopped shortly after it left the Glenwood address. (See Fact Nos. 5, 6 and 7, supra) The Court finds Officer Stauch was justified in stopping the van as the officers had reasonable suspicion that Garrison was present in the van.

Officer Stauch knew defendant Garrison through previous contact. (See Fact No. 6, supra) When he approached the driver's side of the red Ford van, Officer Stauch recognized Garrison. (See Fact No. 8, supra) Garrison produced a driver's license. (Id.) Officer Stauch confirmed that the warrant was valid and arrested Garrison on the warrant. (See Fact Nos. 8 and 9, supra) The Court finds that the officers had probable cause to place defendant Garrison under arrest.

Officer Stauch testified that the vehicle was searched to see if there were any guns or other unsafe items in the vehicle and that the decision to tow the vehicle had been made prior to the search. (See Fact No. 11, supra) Where there is no possibility that an arrestee could reach into his vehicle and obtain a weapon, there is no longer authority for police to search a vehicle for weapons as a search incident to arrest given the Supreme Court's decision in Arizona v. Gant, 129 S.Ct. 1710 (2009). Therefore, the search cannot be justified as a search incident to arrest.[5] However, the search of the vehicle was permissible as an inventory search. A warrantless inventory search of a vehicle is valid if it is conducted pursuant to standardized police procedures and not done in bad faith or for the sole purpose of investigation. See Colorado v. Bertine, 479 U.S. 367, 372 (1987). As set forth above, defendant Garrison, the driver of the vehicle, had been placed under arrest. (See Fact No. 9, supra) The vehicle was not legal on the roads as the tags on it were expired and registered to another vehicle. (See Fact No. 7, supra) Officer Stauch testified that he had made the decision to

---

[5] Government counsel argues that the search could be justified as a search incident to arrest post-Gant. The Gant court found that a search incident to arrest is justified if it is reasonable to believe that evidence relevant to the crime of arrest might be found in the vehicle. See Arizona v. Gant, 129 S.Ct. 1710, 1719 (2009). The Court notes that defendant Garrison was arrested pursuant to a warrant for tampering with a motor vehicle (i.e. stolen vehicles). (See Fact No. 1, supra) The officers did not arrest him because they believed him to be committing the offense of tampering at that time. Given the other justification for conducting the search, the Court need not reach the issue of whether the search would also be proper under the Gant decision.

tow the vehicle prior to the search. (See Fact No. 11, supra) The Independence Police Department's written policy provides that "an inventory search will be conducted on any vehicle seized by a member of the department." (See Fact No. 15, supra) The Court finds that the inventory search was conducted pursuant to standardized police procedures and that it was not done in bad faith or for the sole purpose of investigation.

Given the Court's finding that the initial stop of the vehicle, the subsequent arrest of defendant Garrison and the inventory search were proper, there is no basis for suppression.

## IV. CONCLUSION

Based on the foregoing, it is

RECOMMENDED that the Court, after making an independent review of the record and applicable law, enter an order denying defendant Garrison's Motion to Suppress (doc #25).

Counsel are reminded they have fourteen days after being served a copy of this Report and Recommendation within which to file and serve objections to same. A failure to file and serve objections by this date shall bar an attack on appeal of the factual findings in this Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

                                                                  */s/ Sarah W. Hays*
                                                         SARAH W. HAYS
                                  UNITED STATES MAGISTRATE JUDGE